# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | |
|---|---|
| **GLENDA SLATER,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action No. 1:10-1091** |
| ) | |
| **BANK OF AMERICA, N.A.,** ) | |
| ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendant's Motion for Summary Judgment (Document No. 28.), filed on October 21, 2011. The Court notified Plaintiffs pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiffs had the right to file a response to Defendant's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting their claims as they are challenged by Defendant in moving to dismiss. (Document No. 30.) On February 28, 2012, Plaintiffs filed their Response in Opposition to Defendant's Motion. (Document No. 42.) Having conducted a thorough examination of the record, the undersigned has determined and hereby respectfully recommends that Defendant's Motion for Summary Judgment should be granted.

## PROCEDURAL BACKGROUND

On August 12, 2010, Plaintiffs Glenda Slater and Robert Slater filed a "Declaratory Judgment For Verification of Debt" against Defendant in the Circuit Court of Monroe County, West Virginia.[1] (Document No. 1, pp. 8 - 32.) Plaintiffs state that Defendant claims Mrs. Slater "owes them money through an alleged loan done under a Promissory Note and Deed of Trust, secured by

---

[1] Because Plaintiffs are acting *pro se*, the documents which they have filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See* Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

real estate owned by the Plaintiff as collateral."[2] (Id., p. 10.) Plaintiffs claim that "[w]ith the widespread practice of mortgage backed securities trading and the pooling of mortgages, it is uncertain who is actually the note holder in due course of the Plaintiffs' Promissory Note and Deed of Trust." (Id.) Plaintiffs, therefore, state that "it is reasonable . . . to verify whether or not Defendant has a valid claim, standing to foreclose, and the lawful right to enforcement to collect money on the alleged loan." (Id.) Plaintiffs further assert that they sent Defendant a Qualified Written Request requesting the original wet ink signature to establish proof of claim on June 9 and 29, 2010. (Id., p. 11.) Plaintiffs complain that Defendant "only provided a photocopy of the Deed of Trust and Promissory Note made years ago." (Id.) Thus, Plaintiffs contends that Defendant violated the Real Estate Settlement Procedures Act [RESPA], 12 U.S.C. § 2601 *et seq.*, and the Truth in Lending Act [TILA], 15 U.S.C. §§ 1601 *et seq.*, by failing to properly respond to their Qualified Written Request. (Id.) Plaintiffs also dispute the debt pursuant to the Fair Debt Collection Practices Act [FDCPA], 15 U.S.C. §§ 1692 *et seq.*. (Id., p. 15.) Plaintiffs state that "[t]he point at issue is whether or not the Defendant has valid proof of claim and therefore standing to foreclose." (Id., p. 6.) Plaintiffs, therefore, request that the "Court render a Declaratory Judgment as to whether or not the Defendant has a valid claim on the purported loan." (Id., p. 13.) Plaintiffs further request that the loan be rescinded and declared void, and for a lump sum payment of all monies collected on the loan, plus interest. (Id., p. 22.)

      On September 10, 2010, Defendant filed a Notice of Removal with this Court. (Id., pp. 1 - 4.) Defendant filed its Answer on September 15, 2010. (Document No. 4.) The Court entered a Scheduling Order on December 6, 2010. (Document No. 10.) On October 21, 2011, Defendant filed a Motion for Summary Judgment. (Document No. 28.) First, Defendant argues that Plaintiffs' claims should be dismissed because Defendant, as servicer of the loan on behalf of the holder, has authority to enforce the terms of the loan and collect the debt owed by Mrs. Slater. (Document No. 29, pp.

---

[2] Plaintiffs' Complaint concerns a consumer credit transaction regarding property located on Pine Grove Road, Lindside, West Virginia.

2, 9 - 16.) Next, Defendant asserts that "Plaintiffs' effort to enjoin enforcement of the loan must be denied because they have failed to state a valid claim for injunctive relief." (Id., p. 3, 16 - 17.) Finally, Defendant claims that "Plaintiff Robert Slater, who did not execute either the Note or the Deed of Trust, must be dismissed as a party-plaintiff because he is not a real party in interest." (Id., pp. 17 - 18.)

In support, Defendant attaches the following Exhibits: (1) A copy of the transcript of Plaintiff Glenda Slater's Deposition (Document No. 28-1.); (2) A copy of the Adjustable Rate Note dated March 11, 2004 (Document No. 28-2.); (3) A copy of the original recorded Deed of Trust dated March 11, 2004 (Document No. 28-3.); (4) A copy of a Corporate Assignment of Security Instrument dated March 11, 2004 (Document No. 28-4.); (5) A copy of an Assignment of Mortgage dated April 30, 2004 (Document No. 28-5.); (6) A copy of the Note Rider dated March 11, 2004 (Document No. 28-6.); (7) A copy of the Servicing Disclosure Statement dated February 11, 2004 (Document No. 28-7.); (8) A copy of the Notice of Assignment dated April 26, 2004 (Document No. 28-8.); (9) A copy of the Notice of Right to Cure Default dated April 16, 2010 (Document No. 28-9.); (10) A copy of the Notice of Right to Cure Default dated May 17, 2010 (Document No. 28-10.); (11) A copy of a letter from Defendant to Plaintiff Glenda Slater dated May 24, 2010 (Document No. 28-11.); (12) A copy of a letter from Plaintiff Glenda Slater to Defendant dated June 8, 2010 (Document No. 28-12.); (13) A copy of a letter from Defendant to Plaintiff Glenda Slater dated June 18, 2010 (Document No. 28-13.); (14) A copy of a letter from Plaintiff Glenda Slater to Defendant dated June 29, 2010 (Document No. 28-14.); (15) A copy of a letter from Defendant to Plaintiff Glenda Slater dated July 14, 2010 (Document No. 28-15.); (16) A copy of a letter from Plaintiff Glenda Slater to Defendant dated July 16, 2010 (Document No. 28-16.); (17) A copy of a letter from Defendant to Plaintiff Glenda Slater dated July 23, 2010 (Document No. 28-17.); (18) A copy of a letter from Defendant to Plaintiff Glenda Slater dated July 26, 2010 (Document No. 28-18.); (19) A copy of Plaintiffs' Initial Disclosures (Document No. 28-19.); and (20) A copy of the "Notice of Right to Cure Default" dated July 19, 2010 (Document No. 28-20.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiffs on October 24, 2011, advising them of the right to file a response to the Defendant's Motion for Summary Judgment. (Document No. 30.) On February 28, 2012, Plaintiff Glenda Slater filed a "Response to Defendants' Motion to Dismiss." (Document No. 42.) Plaintiff Glenda Slater argues that Defendant's motion for summary judgment should be denied "because they have not produced to the court any of the documentation to prove that I owe them for the loan in question." (Id.) Plaintiff contends that "[w]hen a finance company buys a loan from another finance company they are buying the note. The note is the original loan agreement with the borrowers signature on it. That note is called the original wet ink signature. If they do own the loan in question then they will have the original wet ink signature loan agreement that I have asked for." (Id.)

On March 8, 2012, Defendant filed a Reply. (Document No. 43.) First, Defendant states that "Plaintiff Glenda Slater has removed all doubt that her Complaint is simply a 'show me the note' pleading designed to avoid her contractual obligations to repay the money she borrowed under the terms of the Note and Deed of Trust." (Id., p. 1.) Defendant notes that "during her deposition testimony, Plaintiff Glenda Slater testified that Plaintiffs' case solely concerns production of the 'original wet ink' Note and Deed of Trust, and that if those documents are produced, Plaintiffs will not contest foreclosure and the case 'should be dismiss.'" (Id., p. 2.) Defendant claims that "Plaintiffs do not allege any confusion regarding how or to whom payments are supposed to be made under the terms of the Note." (Id.) Defendant notes that Plaintiff Glenda Slater made her loan payments to Defendant through June 2010 and Plaintiffs do not "allege that there is some other person or entity that has sought to enforce the terms of the Note against them or to exercise the power of sale under the Deed of Trust." (Id.) Next, Defendant argues that "in non-judicial foreclosure states, such as West Virginia, there is no requirement that the holder produce the original note or deed of trust before it can proceed with foreclosure." (Id., p. 3.) Even if there was a requirement for Defendant to produce the original Note, Defendant asserts that it "has produced a copy of the original wet ink note both in its supplemental disclosures and during Glenda Slater's

4

deposition." (Id., p. 3.) Therefore, Defendant argues that its Motion to Dismiss should be granted.

As Exhibits, Defendant attaches the following: (1) The Declaration of Lallique Howe, Assistant Vice President of Litigation management at Bank of America (Document No. 43-1, pp. 1 - 3.); (2) A copy of the original "wet ink" Adjustable Rate Note dated March 11, 2004 (Id., pp. 4 - 7.); (3) A copy of the original recorded Deed of Trust dated March 11, 2004 (Id., pp. 8 - 23.); (4) A copy of a Corporate Assignment of Security Instrument dated March 11, 2004 (Id., pp. 24 - 25.); and (5) A copy of an Assignment of Mortgage dated April 30, 2004 (Id., pp. 26.).

## FACTUAL BACKGROUND

On February 11, 2004, Plaintiff Glenda Slater received a Servicing Disclosure Statement from New York Mortgage Company, LLC [NYMC], which stated that "THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED." (Document No. 28-7.) The statement further provided that NYMC "presently intend[s] to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer." (Id.)

On March 11, 2004, Plaintiff Glenda Slater entered into a loan agreement [the Loan] with NYMC for the amount of $123,000.00. Plaintiff Glenda Slater also executed an Adjustable Rate Note [the Note] as part of her loan agreement with NYMC. (Document No. 28-2.) The Note provided, in pertinent part, as follows:

> I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'
> * * *
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
> * * *
> In additional to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed [the Security Instrument], dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.

(Id., ¶¶ 1, 7, 11.) Plaintiff Glenda Slater also executed a Deed of Trust on March 11, 2004, which secured the Note. (Document No. 28-3.) The Deed of Trust provided, in relevant part, as follows:

5

> Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.
>
> * * *
>
> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Services unrelated to a sale of the Note.

(Id.) Plaintiff Glenda Slater signed the Deed of Trust and initialed each preceding page. (Id.) The Deed of Trust provided that by signing, Plaintiff Glenda Slater "accept[ed] and agree[d] to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded it with." (Id.) The Deed of Trust was recorded on April 15, 2004, in the Office of the Clerk of the County Commission of Monroe County, West Virginia. (Id.)

On March 11, 2004, after the closing of the Loan, NYMC assigned its ownership interest in the Loan to IMPAC Companies Deutsche Bank National Trust Company [IMPAC]. (Document Nos. 28-4 and 28-5.) The Assignment was recorded in the Office of the Clerk of the County Commission of Monroe County, West Virginia. (Document No. 28-4.) By "Notice of Assignment, Sale or Transfer of Servicing Rights" dated April 26, 2004, NYMC notified Plaintiff Glenda Slater that her Loan had been "assigned, sold, or transferred" to IMPAC. (Document No. 28-8.) The Notice further advised Plaintiff Glenda Slater that the transfer would be effective May 1, 2004, and all payments after this date should be made to the new servicer. (Id.) Defendant, Bank of America [BOA], is the servicer of the Loan on behalf of IMPAC. (Document No. 43-1, p. 2.)

By "Notice of Right to Cure Default" dated April 16, 2010, Defendant notified Plaintiff Glenda Slater that her Loan was in default and failure to cure the default by May 16, 2010, would "result in the accelerate of the balance owing on the deed of trust and the immediate initiation of foreclosure proceedings against the collateral involved." (Document No. 28-9.) The Notice informed Plaintiff Glenda Slater that the total amount necessary to bring her Loan current was $1,566.30. (Id.)

By "Notice of Right to Cure Default" dated May 17, 2010, Defendant notified Plaintiff

Glenda Slater that her Loan was in default and failure to cure the default by June 16, 2010, would "result in the accelerate of the balance owing on the deed of trust and the immediate initiation of foreclosure proceedings against the collateral involved." (Document No. 28-10.) The Notice informed Plaintiff Glenda Slater that the total amount necessary to bring her Loan current was $1,558.48. (Id.)

Subsequently, Plaintiff discussed with Defendant the possibility of modifying her Loan through the federal government's Home Affordable Modification Program. By letter dated May 24, 2010, Defendant notified Plaintiff Glenda Slater that she needed to provide additional documents because "[t]he program requires we receive certain financial information from you in order to verify your eligibility to begin the process toward a permanent home loan modification and a more affordable monthly mortgage payment." (Document No. 28-11.) Plaintiff Glenda Slater, however, failed to provide the additional documents because she was unemployed and believed she would not qualify for the modification. (Document No. 28-1, pp. 48 - 49.) Plaintiff Glenda Slater acknowledges that she ceased making her Loan payments as of June, 2010. (Id., pp. 21 - 22.)

By letter dated June 8, 2010, Plaintiff Glenda Slater requested a "Qualified Written Request: Verification of Proof of Claim Requested" from Defendant. (Document No. 28-12.) Specifically, Plaintiff Glenda Slater requested "to visually inspect MY ORIGINAL WET INK SIGNATURE PROMISSORY NOTE." (Id.) Defendant responded to Plaintiff Glenda Slater's request by letter dated June 18, 2010. (Document No. 28-12.) Defendant provided Plaintiff with a copy of her Note, Uniform Residential Loan Application, Loan Transaction History Statement, and Deed of Trust. (Id.)

By correspondence entitled "Legal Notice: Second Request for Proof of Claim" dated June 29, 2010, Plaintiff notified Defendant that "[y]ou did not provide any proof to sufficiently satisfy your claim under U.C.C. - Article 3 - §3-302 that you are a note holder in due course." (Document No. 28-14.) Defendant responded to Plaintiff Glenda Slater's June 29, 2010, correspondence by letter dated July 14, 2010. (Document No. 28-15.) Specifically, Defendant provided Plaintiff Glenda

Slater with a copy of "all available loan documents" and advised her that a copy of the Loan Transaction History Statement had been sent to her under separate cover. (Id.) Plaintiff Glenda Slater sent Defendant a correspondence entitled "Notice of Default and Cease and Desist" dated July 16, 2010. (Document No. 28-16.) Plaintiff Glenda Slater stated that due to Defendant's "non-response to my 2nd qualified written request for proof of claim," Defendant has "violated the requirements of RESPA" and "no longer has any claim over my property." (Id.)

By "Notice of Right to Cure Default" dated July 19, 2010, Defendant notified Plaintiff Glenda Slater that her Loan was in default and failure to cure the default by August 18, 2010, would "result in the accelerate of the balance owing on the deed of trust and the immediate initiation of foreclosure proceedings against the collateral involved." (Document No. 28-20.) The Notice informed Plaintiff Glenda Slater that the total amount necessary to bring her Loan current was $1,505.66. (Id.)

By letter dated July 23, 2010, Defendant acknowledged receipt of Plaintiff Glenda Slater's July 16, 2010, correspondence and advised Plaintiff additional time was needed for a reply. (Document No. 28-17.) By letter dated July 26, 2010, Defendant filed a detailed reply to Plaintiff Glenda Slater's July 16, 2010, correspondence. (Document No. 28-18.) Defendant informed Plaintiff Glenda Slater that "[s]igned copies of the available documents pertaining to the origination of the subject loan were mailed July 14, 2010" and "[a] Loan Transaction History Statement was also mailed to you under separate cover that provides a detailed outline of transactions associated with this loan." (Id.) Defendant further advised Plaintiff that "[t]he owner of this loan is IMPAC" and "Bank of America services the loan on behalf of the owner." (Id.) Finally, Defendant informed Plaintiff Glenda Slater that "all other requests are declined as they seek documentation that goes beyond that which is available through a Qualified Written Request made under 12 U.S.C. § 2605(B)." (Id.)

## **THE STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**A.     Defendant's Right to Enforce Loan:**

A promissory note is "[a]n unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person." Arnold v. Palmer, 224 W. Va. 495, 502, 686 S.E.2d 725, 732 (2009)(citations omitted). A promissory note is a negotiable instrument governed by the Uniform Commercial Code. Id.; also see W. Va. Code § 46-3-401. A deed of trust is "a deed that conveys title to real property in trust as security until the grantor repays the loan." Arnold, 224 W.Va. at 503, 686 S.E.2d at 733. "In the case of default of a debt secured by a deed of trust, the property becomes liable to sale under the power of sale conferred upon the trustee." Id. "[D]eeds of Trust are subject to the principles of interpretation and construction that govern contracts generally." Id.(citations omitted.) "[A] valid written instrument which expresses the intent of the parties in plain and unambiguous language is

9

not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Id.

Persons entitled to enforce an instrument are "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or 3-418(d)." W. Va. Code § 46-3-301. "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." W. Va. Code § 46-3-201. "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument." W. Va. Code § 46-3-203.

In the instant case, Plaintiff Glenda Slater signed a Note and Deed of Trust with NYMC on March 11, 2004. The express terms of the Note indicated that it is freely transferable. Specifically, the Note provided that "I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Document No. 28-2, p. 2.) Plaintiff Glenda Slater signed the Note and initialed each page of the Note. (Id.) Prior to executing the Note and Deed of Trust, Plaintiff Glenda Slater received a Servicing Disclosure Statement from NYMC stating that NYMC "presently intend[s] to assign, sell or transfer the servicing of your mortgage loan." (Id.) Subsequently, NYMC assigned its ownership interest in the Loan to IMPAC. (Document Nos. 28-4 and 28-5.) Defendant is acting as the loan servicer for IMPAC. The Court notes that the security instruments provided that the Note Holder could act through agents or assignees, such as loan servicers, to collect a the Loan obligation. In their Complaint, Plaintiffs argue they should not have to make payments under the Note and Deed of Trust until the holder of the commercial paper is identified.[3] Based on the foregoing, the undersigned finds that IMPAC is the holder of the original Note and Defendant is the loan servicer.

---

[3] Plaintiffs state that "[t]he point at issue is whether or not the Defendant has valid proof of claim and therefore standing to foreclose." (Document No. 1, p. 6.) Importantly, Plaintiffs do no allege that some other person or entity is seeking to enforce the terms of the Loan.

Accordingly, Defendant has authority to collect and enforce the terms of the Note and Deed of Trust.

Plaintiffs further complain that Defendant has failed to produce the original wet ink promissory note and original Deed of Trust. Specifically, Plaintiffs allege that "[i]f Defendant would simply produce the original wet ink promissory note with the allonge and the original Deed of Trust, we can all go home as this matter will be settled." (Document No. 1, p. 14.) Based upon a review of the record, Defendant produced copies of the original wet ink Note and original recorded Deed of Trust (1) by correspondences to Plaintiffs dated June 18, 2010 and July 14, 2010 (Document Nos. 28-13 and 28-15.), and (2) during Plaintiff Glenda Salter' deposition (Document No. 28-1, p. 15 - 21, 34 - 38, 63.). Thus, to the extent Plaintiffs allege that Defendant violated the RESPA by failing to respond to their Qualified Written Request, the undersigned finds their claim to be without merit.[4]

---

[4] Title 12 U.S.C. § 2605(e)(2) provides as follows:

(2) Action with respect to inquiry

> Not later than 60 days . . . after the receipt for any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall - -
>
> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . .;
>
> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes - -
> > **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> > **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes - -
> > **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

See 12 U.S.C. § 2605(e)(1) - (2); (Document Nos. 28-13 and 28-15.). Additionally, Defendant filed copies of the original Note, Deed of Trust, and Assignment of Mortgage as Exhibits to its Motion for Summary Judgment. (Document Nos. 28-2, 28-3, 28-5, and 43-1.) Plaintiff Glenda Slater, however, argues that Defendant "has not produced to the court any of the documentation to prove that I owe them for the loan in question." Plaintiff's conclusory claim that the Note and other documents are not authentic lacks merit. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)(finding that in the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails.). Accordingly, the Court finds that Defendant adequately produced to Plaintiffs a copy of the original Note and Deed of Trust exhibiting that Defendant has the right to enforce the Loan.

Even assuming Defendant failed to adequately produced to Plaintiffs a copy of the original Note and Deed of Trust, Plaintiffs' claim is without merit. West Virginia is a non-judicial foreclosure state and non-judicial foreclosure states routinely hold that there is no requirement that the holder produce the original note or deed of trust before proceeding with foreclosure.[5] In re Bardell, 374 B.R. 588, 591 (N.D.W.Va. Aug. 10, 2007)("West Virginia is a deed of trust state with non-judicial foreclosure."); also see Hien Pham v. Bank of New York, ___ F. Supp.2d ___,2012 WL 1222572 (E.D.Va. April 10, 2012)([J]ust as a noteholder is not 'required to come to a court of law and prove its authority or standing to foreclose on a secured property,' so too a nominal beneficiary or a substitute trustee, for the same reason, should not be required to prove in court that

---

        **(ii)** the name and telephone of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

  [5] West Virginia Code § 38-1-3 provides as follows: "The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debut due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or other person owing such debt, and if all other conditions precedent to sale by the trustee as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section."

it has the noteholder's authority. To conclude otherwise would allow borrowers to compel judicial intervention in any foreclosure proceeding where a deed of trust has changed hands or a substitute trustee has been appointed.");[6] Gallant v. Deutsche Bank National Trust Co., 766 F.Supp.2d 714, 721 (W.D.Va. Feb. 2, 2011)(citation omitted)(A "show me the note" theory has been widely rejected as "contrary to Virginia's non-judicial foreclosure laws."); Minix v. Wells Fargo Bank, 81 Va. Cir. 130, 2010 WL 7765589, * 4 (Va. Cir. Ct. Aug. 24, 2010)(cautioning that courts should not "be creating a judicial foreclosure procedure when the legislature has mandated a non-judicial procedure to be appropriate")(citations omitted); Villers v. Wilson, 172 W.Va. 111, 115, 304 S.E.2d 16, 19 n. 4 (1983)("Foreclosure under a trust deed normally occurs when a trustee, designated by the debtor in the trust deed, executes the trust and sells the property. In the trust deed situation, there is normally no requirement that the trustee institute a proceeding in any court; and there is also no requirement that he obtain judicial authorization to act.") Accordingly, the undersigned finds that Plaintiffs' request for declaratory judgment should be denied and Defendant's Motion for Summary Judgment should be granted.[7]

**B.     Plaintiffs' Claim for Injunctive Relief:**

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies

---

[6] Similar to West Virginia, Virginia is a non-judicial foreclosure state.

[7] To the extent Plaintiffs allege that Defendant violated the FDCPA, the Court finds that their claim must be dismissed. The FDCPA applies to "debt collectors." *See* 15 U.S.C. § 1692a(6). In the instant case, Defendant is a servicer of the Loan. It is well established that "creditors, mortgagees, and mortgage servicing companies are not debt collectors and are statutory exempt from liability under the FDCPA." *Blick v. JP Morgan Chase Bank, et al.*, 2012 WL 1030115 (W.D.Va. Mar. 27, 2012)( *citing Ruggia v. Washington Mutual*, 719 F.Supp.2d 642, 647-48 (E.D.Va. 2010), *aff'd*, 442 Fed.Appx. 816 (4th Cir. 2011)).

13

> to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

As stated above, the undersigned has recommended that Defendant's Motion for Summary Judgment be granted. The undersigned, therefore, cannot find that Plaintiffs are likely to succeed on the merits. Based on the foregoing, the Court finds that Plaintiffs' request for a injunctive relief should be denied.[8]

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendant's Motion for Summary Judgment (Document No. 28.), **DISMISS** Plaintiffs' Complaint (Document No. 1, pp. 8 - 32.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby

---

[8] The undersigned finds it unnecessary to address the remaining issue that Defendant has presented for dismissal of Plaintiffs' claim.

**FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and counsel of record.

Date: June 26, 2012.

R. Clarke VanDervort
United States Magistrate Judge